**FILED**
**FEBRUARY 15, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**08 C 984**

| | |
|---|---|
| LEANN SEXTON,<br><br>Plaintiff<br><br>v.<br><br>VILLAGE OF FOREST VIEW, an Illinois municipal corporation, and DAVID GLENN, and SERGEANT GALE, both in their individual and official capacities as officers of the VILLAGE OF FOREST VIEW POLICE DEPARTMENT and FIREFIGHTER ROE, FIREFIGHTER ANTOS, FIREFIGHTER RIHA and FIREFIGHTER DELORENZO, both in their individual and official capacities as officers of the VILLAGE OF FOREST VIEW FIRE DEPARTMENT<br><br>and<br><br>VILLAGE OF BROOKFIELD, an Illinois municipal corporation, and THOMAS SCHOENFELD, MICHAEL MANESCALCHI, JEFFREY LEH, and MICHELLE ROBBINS both in their individual and official capacities as officers of the VILLAGE OF BROOKFIELD POLICE DEPARTMENT<br><br>and<br><br>COUNTY OF COOK, an Illinois municipal corporation, and J. SCOTT DENTON, INVESTIGATOR ORTIZ, INVESTIGATOR MENCONI, both in their individual and official capacities as officers of the COUNTY OF COOK, OFFICE OF THE MEDICA EXAMINER,<br><br>Defendants. | **JUDGE KOCORAS**<br>**MAGISTRATE JUDGE VALDEZ**<br><br><br><br>Civil Action No |

## COMPLAINT

NOW COME, Plaintiff Leanne Sexton, by her undersigned attorney, and complaining of Defendants as follows:

## Preliminary Statement

1. This is a civil action brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 seeking damages against Defendants for committing acts, under color of law, which deprived Plaintiff of rights secured under the Constitution and laws of the United States; for conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiff equal protection of laws; and for refusing or neglecting to prevent such deprivations and denials to Plaintiff.

## Jurisdiction

2. Plaintiffs invoke the jurisdiction of this Court under 28 U.S.C. §§ 1331, 1343, and 1367. Federal jurisdiction is appropriate in this instance to secure protection and to redress deprivation of rights conferred by the Fifth Amendment to the United States Constitution and Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## Venue

3. Venue is proper in this Court under 28 U.S.C. § 1391, in that a substantial part of the events giving rise to the claims in the present lawsuit arose in this district.

## Parties

4. Plaintiff Leanne Sexton, a Caucasian female, is a citizen of the United States, and a resident of Tinley Park and of Cook County, Illinois.

5. Defendant, Village of Forest View, is an Illinois municipal corporation, with fire and police departments, to which the police department consists of 8 sworn police officers, some auxiliary police officers, some civilian employees, and some crossing guards. The police

department is charged under law, among other things, with providing security for all village events as well as serving and protecting the citizens of the community. The fire department consists of 4 career firefighters and 16 paid per call firefighters. The fire department is charged under law, among other things, with providing fire suppression, firefighting and paramedic services for the community.

6. Defendant David Glenn, at all relevant times, was Chief of Police of Defendant Village of Forest View and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as chief of police and sworn police officer. He is sued both individually and in his official capacity.

7. Defendant Sergeant Gale, at all relevant times, was a sergeant and sworn police officer of Defendant Village of Forest View and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as a sergeant and sworn police officer. He is sued both individually and in his official capacity.

8. Defendant Firefighter ROE, whose identity is not known at this time, at all relevant times, was a firefighter of Defendant Village of Forest View and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as a firefighter. He is sued both individually and in his official capacity.

9. Defendant Firefighter Antos, at all relevant times, was a firefighter of Defendant Village of Forest View and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions

entrusted to that department as a firefighter. He is sued both individually and in his official capacity.

10. Defendant Firefighter Riha, at all relevant times, was a firefighter of Defendant Village of Forest View and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as a firefighter. He is sued both individually and in his official capacity.

11. Defendant Firefighter Delorenzo, at all relevant times, was a firefighter of Defendant Village of Forest View and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as a firefighter. He is sued both individually and in his official capacity.

12. Defendant Village of Brookfield, is an Illinois municipal corporation, with a police department of 32 sworn police officers, 10 auxiliary police officers, 7 civilian employees, and 18 crossing guards, which department is charged under law, among other things, with providing security for all village events as well as serving and protecting the citizens of the community.

13. Defendant Thomas Schoenfeld, at all relevant times, was Chief of Police of Defendant Village of Brookfield and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as chief of police and sworn police officer. He is sued both individually and in his official capacity.

14. Defendant Michael Manescalchi, at all relevant times, was Deputy Police Chief of Defendant Village of Brookfield and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as deputy police chief and sworn police officer. He is sued both individually and in his official capacity.

15. Defendant Jeffrey Leh, at all relevant times, was a lieutenant and sworn police officer of Defendant Village of Brookfield and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as a lieutenant and sworn police officer. He is sued both individually and in his official capacity.

16. Defendant Michelle Robbins, at all relevant times, was Human Resources Director of Defendant Village of Brookfield and, upon information and belief, she was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted by that village as human resources director. She is sued both individually and in her official capacity.

17. Defendant County of Cook, is an Illinois municipal corporation, with a medical examiner's office, which department is charged under law, among other things, with investigating any human death that involves criminal violence, suicide, accident, sudden death when in apparent good condition, death unattended by a practicing licensed physician, or death under suspicious or unusual circumstances. Further, the medical examiner's office is charged under law to supply autopsy protocols (i.e., description of what is found at an autopsy), and provide certificates of death to funeral directors for filing with local registrars.

18. Defendant J Scott Denton, at all relevant times, was the Interim Medical Examiner of Defendant Cook County, Office of the Medical Examiner, and upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that office as an interim medical examiner. He is sued both individually and in his official capacity.

19. Defendant Menconi, at all relevant times, was an Investigator with Defendant Cook County, Office of the Medical Examiner, and upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that office as an investigator. He is sued both individually and in his official capacity.

20. Defendant Ortiz, at all relevant times, was an Investigator with Defendant Cook County, Office of the Medical Examiner, and upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that office as an investigator. He is sued both individually and in his official capacity.

### Facts

21. Plaintiff came home from work on Thursday, February 1, 2007 to find her mother hanging from a rafter in the basement with an electrical cord wrapped around her neck. After screaming hysterically for help and running up and down the basement stairs, Plaintiff was able to gain her wits long enough to grab a knife and pull a chair close to cut her mother down, stand on the chair, and gently guide her mother down into a sitting position. Thereupon, Plaintiff gently eased her mother into the chair that Plaintiff was standing on and had used to reach the cord secured tightly around her mother's neck. Still distraught and panicked, Plaintiff momentarily regained presence of mind to run upstairs to call for medical

assistance. The firefighters/paramedics from the Forest View Fire Department ("FVFD") arrived quickly (within a couple of minutes) and attempted to resuscitate Plaintiff's mother. Regretfully, the paramedics were not successful in their efforts. The body was then transported by ambulance to the hospital.

22. Plaintiff's mother was declared dead on arrival at Mac Neal Hospital on February 1, 2007. Dr. Wadley at Mac Neal Hospital checked the body of Plaintiff's mother and found that a ligature mark was present on her neck. This was confirmed by Dr. J. Scott Denton, Interim Chief Medical Examiner, Office of the Medical Examiner, Cook County ("CCME"), who on February 2, 2007, examined the body of Plaintiff's mother and found "… upwards ligature impression mark around the neck with suspension point in the back of the head[.] Based on this observation, Dr. Denton opined that Plaintiff's mother committed suicide. In sum, both of these medical doctors (i.e., Wadley and Denton) simply looked at the neck of Plaintiff's mother and determined that she died by strangulation. But a medical degree would not have been needed to make this declaration because that fact would be self-evident to any casual observer without any special training.

23. This would be the end of a very sad story but for the fact that Sergeant Gale of the Forest View Police Department ("FVPD") arrived on the scene sometime during the time that the FVFD paramedics were attempting to revive Plaintiff's mother and/or during the time that Plaintiff's family members and neighbors arrived on the scene, who family members and neighbors were present at all times to console and calm Plaintiff down while Gale was around.

24. During this hectic and traumatic time, with witnesses present, Gale alleges he was told by Plaintiff, twice, that Plaintiff told him that she "… arrived at the residence after work

7

and discovered her mother sitting in a chair in the basement." But he was never told this. The truth of the matter is that Gale wrote a police report stating that Plaintiff's mother was found sitting in a chair so that (presumably), Plaintiff's mother would be adjudged to have died by natural causes.

25. Gale intentionally and with malice published this false statement in his police report to impugn Plaintiff's veracity and hold her out as a liar, not to be trusted.

26. Gale had no basis for making this false statement, especially since it is against the law to knowingly make false statements in a police report and at no time did Plaintiff ever tell him to do so. Indeed, Plaintiff told FVPD Officer Kulaga that Plaintiff's mother hung herself; provided Kulaga with the electrical cord Plaintiff's mother used to hang herself, as well as explained the actual location of where the incident occurred. As such, there would be no reason for Plaintiff to tell Gale one thing and then tell Kulaga a completely different story within hours of speaking first to Gale and then to Kulaga. Gale did not do the most rudimentary investigation. To the contrary, he rushed in and made the notation that Plaintiff's mother was found in chair without conducting an investigation of the scene.

27. The problem for Gale was that he incriminated himself by making the false statement in the police report. A further problem for Gale was that the body of Plaintiff's mother went from Mac Neal Hospital to Suburban Funeral Home without a death certificate indicating that Plaintiff's mother committed suicide based on the "found in chair" false statement made by Gale. For this reason, Stanley Kulaski, the Funeral Director at Suburban Funeral Home, and brother-in-law to Plaintiff by marriage, could not take custody of the body of Plaintiff's mother at the Suburban Funeral Home without a proper death certificate indicating the true cause of death. Therefore, Kulaski telephoned the CCME and spoke with

CCME Investigator Menconi. During that conversation, Kulaski told Menconi that Plaintiff's mother "… when initially discovered had been found hanging in the basement of the residence." Kulaski stated that Plaintiff's mother "… did not expire from natural causes and actually committed suicide by hanging." Further, Kulaski told Menconi that it was common knowledge that Plaintiff or "… Plaintiff's family members … had cut … [Plaintiff's mother] down, removed the ligature, and placed … [Plaintiff's mother] on a chair in the basement prior to calling the authorities."

28.     It was not until after Kulaski's telephone call to Menconi that Gale either went back to the scene of the hanging and finally spoke with Kulaga, who may have done the investigation that Gale should have done when he initially appeared on the scene. Indeed, this basic investigation, which Gale should have completed prior to making the false statement in the police report, is related in the report of CCME Investigator Ortiz. Namely, the report by Ortiz states that an investigation of the scene revealed a hook was found attached to a basement rafter and [sic] the ligature had been attached to the hook and tied around the … neck … of [Plaintiff's mother]."

29.     To cover up Gale's false "found in chair statement," which led to the initial natural causes death certificate being issued, CCME Investigator Menconi allegedly had a conversation with Plaintiff on February 1, 2007. As published in the report of CCME Investigator Ortiz, Plaintiff is alleged to have "… identified herself as being a police officer from the Brookfield Police Department … [and] reaffirmed that … Plaintiff … discovered … [Plaintiff's mother] on a chair in the basement, unresponsive." Plaintiff never had such a conversation with Menconi.

30. Additionally, Plaintiff never had such a conversation with FVFD firefighters Roe, Antos, Riha and DeLorenzo, notwithstanding their report that Plaintiff's mother was found "… sitting in a chair by the daughter" and their initial impression, as marked on that report that Plaintiff's mother suffered "cardiac arrest."

31. Even though Plaintiff never told anyone that she came home to find her mother sitting in a chair in the basement, Gale wrote that in his police report and conspired with the other named Defendants to cover his tracks. Plaintiff ultimately was terminated as a records clerk with Defendant Village of Brookfield because of this. Indeed, Gale conspired and agreed with each of the named Defendants to deprive Plaintiff of her civil rights by publishing and distributing false statements, refusing to rectify the inaccuracies in the stated reports; and hiding, altering or otherwise obfuscating evidence of their conduct.

32. As a proximate result of the foregoing defamatory statements by Defendants, Plaintiff suffered injuries, including injuries to her reputation as was fired due to the statements of the Defendants.

33. The foregoing defamatory statements were made by Defendants with knowledge of their falsity and with actual malice.

34. The conspiracy to get rid of Plaintiff was continued by Defendant Village of Brookfield on Monday, February 12, 2007, with an informal meeting. Present at that meeting was Shoenfeld, Lee, Robbins and Plaintiff, during which Shoenfeld explained to Plaintiff his "… proposal for seeking her employment termination" and "… offered … [Plaintiff] the opportunity to resign for 'Personal Reasons'." During the course of this meeting, Shoenfeld did not allow Plaintiff "… the opportunity to offer any explanations" to rebut the false witness made against her.

35. Later that same day, on Monday, February 12, 2007, Shoenfeld sent a letter to Plaintiff that was styled as a "Notice of Pre-Termination Hearing." The letter set Plaintiff's pre-termination hearing for Friday, February 16, 2007, a mere three full days, not counting time for mailing, which was violative of the Village of Brookfield's regulations, policies, customs and procedures required to be given to employees threatened with disciplinary actions. This extremely short notice was designed to make it impossible for Plaintiff to respond to the allegations, gather evidence to rebut the claims against her; and ensure that witnesses in her defense could be contacted and present for the hearing.

36. The February 12, 2007 letter further provided that "[a] final decision regarding … [Plaintiff's] employment status will be made **after** the scheduled pre-termination hearing." Id. (*emphasis supplied*). But this statement by Shoenfeld was knowingly false because Plaintiff was presented with a resignation form to sign along with the notice of pre-termination hearing. Indeed, Shoenfeld did not need a hearing to decide what to do. He knew he was going to terminate Plaintiff.

37. As further proof that Shoenfeld had summarily decided to terminate Plaintiff, all without conducting the requisite investigation to substantiate the allegations; without properly allowing Plaintiff her due process rights; in direct violation of the Record Clerks and Dispatchers Fraternal Order of Police Contract ("FOP Contract"); and in abrogation of the Village of Brookfield's regulations, policies, customs and procedures; Shoenfeld intentionally published and distributed a memorandum to "all personnel" on February 12, 2007 that Plaintiff was placed on administrative leave as a means to publicly humiliate Plaintiff; cause her great emotional distress; and force her to forego her right to challenge the trumped up allegations against her; compel Plaintiff to give up her right to grievance and

arbitration proceedings as provided by the FOP Contract and the Village's own rules and regulations; and as a means to exert extreme pressure on Plaintiff to just sign the resignation form provided with the February 12, 2007 letter and just go away.

38. Plaintiff was never given a formal, sworn to, complaint setting forth the particulars of the claims against her as is generally required by law. Specifically, Plaintiff was never given in writing a sworn statement of who was making the claims and on what basis. To the contrary, the February 12, 2007 letter merely states baldly and in the most conclusory way, "based upon evidence to be presented that on February 1, 2007, ... [Plaintiff] obstructed a Police Investigation tampering with evidence, providing false statements to Investigators of the Forest View Police Department, and [that Plaintiff] falsely identified ... [herself] as a Brookfield Police Officer to the Cook County Medical examiners [sic] Office."

### First Claim for Relief:
### Violation of the Equal Protection Clause

1-38. Plaintiff, individually, restates all allegations in paragraphs 1-38 above as paragraphs 1 through 38 of this first claim for relief as if fully pled.

39. The foregoing acts of the Defendants violate the Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

### Second Claim for Relief:
### Violation of Due Process

1-39. Plaintiff, individually, restates all allegations above as paragraphs 1 through 39 of this second claim for relief directly and by way of reference as if fully pled.

40. The foregoing acts of the Defendants violate Plaintiff's right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

### Third Claim for Relief:
### Failure to Instruct, Supervise and Control

1-40. Plaintiffs, individually, restate all allegations above as paragraphs 1 through 40 of this third claim for relief directly and by way of reference as if fully pled.

41. At all times relevant to this Complaint, Defendant Gale was acting under supervision of Defendant Glenn and Defendant Village of Forest View; Defendants Antos, Riha, Delorenzo were acting under supervision of Defendant Roe, whose identity is not known at this time, and Defendant Village of Forest View; Defendants Manescalchi, Leh, and Robbins were acting under supervision of Defendant Shoenfeld and Defendant Village of Brookfield; Defendants Menconi and Ortiz were acting under supervision of Defendant Denton of Defendant Cook County.

42. Acting under color of law and pursuant to official policy or custom, as set forth above, Defendants knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiff's rights, failed to instruct, supervise, control and discipline on a continuing basis the individual Defendants in their duties to refrain from publishing false reports; conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the State of Illinois; and otherwise depriving Plaintiff of her constitutional and statutory rights, privileges, and immunities.

43. Defendants had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. The Defendants had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly or with deliberate indifference and callous disregard of Plaintiff's rights failed or refused to do so.

44. Defendants directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of the individual Defendants heretofore described.

45. As a direct and proximate cause of the acts of Defendants, Plaintiff suffered loss of income and severe mental anguish in connection with the deprivation of her constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

### Fourth Claim for Relief:
### Violation of Due Process

1-45. Plaintiff, individually, restates all allegations above as paragraphs 1 through 45 of this fourth claim for relief directly and by way of reference as if fully pled.

46. The foregoing acts of the Defendants violate Plaintiff's right to Due Process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and protected by 42 U.S.C. § 1983.

### Fifth Claim for Relief:
### Defamation, Libel, Slander and False Light

1-46. Plaintiffs, individually, restates all allegations above as paragraphs 1 through 46 of this fifth claim for relief directly and by way of reference as if fully pled.

47. The foregoing acts of the Defendants are defamatory, libelous, slander and otherwise hold Plaintiff out to the public in a false light.

WHEREFORE, Plaintiff prays for judgment in her favor and against the Defendants and for the following relief:

    A.    For a declaration that the Defendants decision to conspire against her and have her terminated without affording her due process

    violates her constitutional and statutory rights under the Fifth and Fourteenth Amendments of the Constitution of the United States;

B. For a declaration that the described acts of Defendants defamed, libeled, slandered and held Plaintiff in a false light;

C. For an award of attorneys' fees and costs incurred by Plaintiff in prosecuting this matter;

D. For an award of punitive damages; and

E. For an award of such other relief in law and equity to which Plaintiff may be entitled to under the premises.

Respectfully submitted,

By: s/Nicholas C. Kefalos
   Attorney for Plaintiff

Nicholas C. Kefalos
VERNOR MORAN, LLC
27 North Wacker Drive, Suite 2000
Chicago, Illinois 60606-2800
(312) 264-4460

## DEMAND FOR JURY TRIAL

  Plaintiff hereby demands trial of her claims by jury to the extent authorized by law.

Respectfully submitted,

By: s/Nicholas C. Kefalos
   Attorney for Plaintiff

Nicholas C. Kefalos
VERNOR MORAN, LLC
27 North Wacker Drive, Suite 2000
Chicago, Illinois 60606-2800
(312) 264-4460