IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LEANN SEXTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Judge Charles P. Kocoras |
| VILLAGE OF FOREST VIEW, an Illinois municipal ) | |
| corporation, and GLENN DAVID, and JEFFREY GALE, ) | |
| both in their individual and in their official capacities as ) | Magistrate Maria Valdez |
| officers of the VILLAGE OF FOREST VIEW ) | |
| POLICE DEPARTMENT, and LESTER ANTOS, ) | |
| RALPH RIHA and DAVID DELORENZO, both in their ) | |
| individual and their official capacities as officers of the ) | |
| VILLAGE OF FOREST VIEW FIRE DEPARTMENT, ) | |
| ) | |
| and ) | |
| ) | Civil Action No.  08 C 984 |
| VILLAGE OF BROOKFIELD, an Illinois municipal ) | |
| corporation, and THOMAS SCHOENFELD, MICHAEL ) | |
| MANESCALCHI, JEFFREY LEH, and MICHELLE ) | |
| ROBBINS both in their individual and in their official ) | |
| capacities as officers of the VILLAGE OF BROOKFIELD ) | |
| POLICE DEPARTMENT, ) | |
| ) | |
| and ) | |
| ) | FILED VIA E-FILING |
| COUNTY OF COOK, an Illinois municipal corporation, ) | |
| and J. SCOTT DENTON, ANTHONY ORTIZ, ) | |
| MARVIN MENCONI, both in their individual and in their ) | |
| official capacities as officers of the COUNTY OF COOK, ) | |
| OFFICE OF THE MEDICAL EXAMINER, ) | |
| ) | |
| Defendants. ) | |

FIRST AMENDED COMPLAINT

NOW COME, Plaintiff Leanne Sexton, by her undersigned attorney, and complaining of

Defendants as follows:

**Preliminary Statement**

1.      This is a civil action brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343 seeking damages against Defendants for committing acts, under color of law, which deprived Plaintiff of rights secured under the Constitution and laws of the United States; for conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiff equal protection of laws; and for refusing or neglecting to prevent such deprivations and denials to Plaintiff.

**Jurisdiction**

2.      Plaintiffs invoke the jurisdiction of this Court under 28 U.S.C. §§ 1331, 1343, and 1367. Federal jurisdiction is appropriate in this instance to secure protection and to redress deprivation of rights conferred by the Fifth Amendment to the United States Constitution and Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**Venue**

3.      Venue is proper in this Court under 28 U.S.C. § 1391, in that a substantial part of the events giving rise to the claims in the present lawsuit arose in this district.

**Parties**

4.      Plaintiff Leanne Sexton, a Caucasian female, is a citizen of the United States, and a resident of Tinley Park and of Cook County, Illinois.

5.      Defendant, Village of Forest View, is an Illinois municipal corporation, with fire and police departments, to which the police department consists of 8 sworn police officers, some auxiliary police officers, some civilian employees, and some crossing guards. The police department is charged under law, among other things, with providing security for all village

events as well as serving and protecting the citizens of the community. The fire department consists of 4 career firefighters and 16 paid per call firefighters. The fire department is charged under law, among other things, with providing fire suppression, firefighting and paramedic services for the community.

6.      Defendant Glenn David, at all relevant times, was Chief of Police of Defendant Village of Forest View and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as chief of police and sworn police officer. He is sued both individually and in his official capacity.

7.      Defendant Jeffrey Gale, at all relevant times, was a sergeant and sworn police officer of Defendant Village of Forest View and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as a sergeant and sworn police officer. He is sued both individually and in his official capacity.

8.      Defendant Lester Antos, at all relevant times, was a firefighter of Defendant Village of Forest View and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as a firefighter. He is sued both individually and in his official capacity.

9.      Defendant Ralph Riha, at all relevant times, was a firefighter of Defendant Village of Forest View and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as a firefighter. He is sued both individually and in his official capacity.

10.    Defendant David Delorenzo, at all relevant times, was a firefighter of Defendant Village of Forest View and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as a firefighter. He is sued both individually and in his official capacity.

11.    Defendant Village of Brookfield, is an Illinois municipal corporation, with a police department of 32 sworn police officers, 10 auxiliary police officers, 7 civilian employees, and 18 crossing guards, which department is charged under law, among other things, with providing security for all village events as well as serving and protecting the citizens of the community.

12.    Defendant Thomas Schoenfeld, at all relevant times, was Chief of Police of Defendant Village of Brookfield and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as chief of police and sworn police officer. He is sued both individually and in his official capacity.

13.    Defendant Michael Manescalchi, at all relevant times, was Deputy Police Chief of Defendant Village of Brookfield and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that department as deputy police chief and sworn police officer. He is sued both individually and in his official capacity.

14.    Defendant Jeffrey Leh, at all relevant times, was a lieutenant and sworn police officer of Defendant Village of Brookfield and, upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative

duties and functions entrusted to that department as a lieutenant and sworn police officer. He is sued both individually and in his official capacity.

15.     Defendant Michelle Robbins, at all relevant times, was Human Resources Director of Defendant Village of Brookfield and, upon information and belief, she was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted by that village as human resources director. She is sued both individually and in her official capacity.

16.     Defendant County of Cook, is an Illinois municipal corporation, with a medical examiner's office, which department is charged under law, among other things, with investigating any human death that involves criminal violence, suicide, accident, sudden death when in apparent good condition, death unattended by a practicing licensed physician, or death under suspicious or unusual circumstances. Further, the medical examiner's office is charged under law to supply autopsy protocols (i.e., description of what is found at an autopsy), and provide certificates of death to funeral directors for filing with local registrars.

17.     Defendant J Scott Denton, at all relevant times, was the Interim Medical Examiner of Defendant Cook County, Office of the Medical Examiner, and upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that office as an interim medical examiner. He is sued both individually and in his official capacity.

18.     Defendant Marvin Menconi, at all relevant times, was an Investigator with Defendant Cook County, Office of the Medical Examiner, and upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the

administrative duties and functions entrusted to that office as an investigator. He is sued both individually and in his official capacity.

19.    Defendant Anthony Ortiz, at all relevant times, was an Investigator with Defendant Cook County, Office of the Medical Examiner, and upon information and belief, he was duly appointed under state law and, at all times, charged with carrying out the administrative duties and functions entrusted to that office as an investigator. He is sued both individually and in his official capacity.

**Facts**

20.    Plaintiff came home from work on Thursday, February 1, 2007 to find her mother hanging from a rafter in the basement with an electrical cord wrapped tightly around her neck. After screaming hysterically for help and running up and down the basement stairs, Plaintiff momentarily regained presence of mind to call for medical assistance. But not standing still to wait for the arrival of the Forest View Fire Department ("FVFD") to help, Plaintiff was able to gain her wits long enough to grab a knife, pull up a chair to stand up on, cut her mother down from the ceiling rafter she was hanging from, and gently ease her mother down.

21.    The firefighters/paramedics from the FVFD arrived. Lester Antos entered the house first running down into the basement, followed by firefighters Ralph Riha and David DeLorenzo and next door neighbor, Larry Powell, right behind them and their equipment. At this moment, Plaintiff was standing on the chair and holding her mother's body, closely to hers, keeping her mother's body from falling to the ground. Lester Antos was the first person to enter the basement and was the first person to see Plaintiff. He told Plaintiff to let go of her mother's body. But Plaintiff would not let go so he pulled the body out of Plaintiff's hands and laid the body flat, in a supine position. Lester Antos, along with Ralph

6

Riha and David DeLorenzo, then set up a defibrillator and attempted to revive Plaintiff's mother. They attempted to resuscitate her. Regretfully, the paramedics were not successful in their efforts. The body was then transported by ambulance to the hospital.

22.    Plaintiff's mother was dead on arrival at Mac Neal Hospital on February 1, 2007. Jeffrey Gale arrived at the hospital and told Dr. Wadley at Mac Neal Hospital that the cause of death was natural causes. Based on this conversation, Dr. Wadley told Sergeant Gale that Dr. Wadley would sign the death certificate and write that the cause of death was natural causes. But when Dr. Wadley checked the body of Plaintiff's mother and found that a ligature mark was present on her neck he was unable to opine that the cause of death was natural causes. This judgment was confirmed by Dr. J. Scott Denton, Interim Chief Medical Examiner, Office of the Medical Examiner, Cook County ("CCME"), who on February 2, 2007, examined the body of Plaintiff's mother and found "... upwards ligature impression mark around the neck with suspension point in the back of the head[.]  Based on this observation, Dr. Denton concluded that Plaintiff's mother committed suicide. In sum, both of these medical doctors (i.e., Wadley and Denton) simply looked at the neck of Plaintiff's mother and determined that she died by strangulation. But Jeffrey gale persisted. Indeed, he told Marvin Menconi to fill out a death certificate listing natural causes as the ground of death.

23.    This would be the end of a very sad story but for the fact that Sergeant Jeffrey Gale of the Forest View Police Department ("FVPD") arrived on the scene sometime during the time that the FVFD paramedics were attempting to revive Plaintiff's mother and/or during the time that Plaintiff's family members, James Sexton and Scott Sexton, and neighbors, Larry Powell and Michael Lewan, were at the home of Plaintiff's mother. Significantly, at

least one family member or neighbor was present at all times to console and calm Plaintiff down while Jeffrey Gale was present.

24.    But even during this hectic and traumatic time, and with witnesses present, Jeffrey Gale alleges he was told by Plaintiff, twice, that Plaintiff told him that she "... arrived at the residence after work and discovered her mother sitting in a chair in the basement" even though he was never told this. The truth of the matter is that Jeffrey Gale wrote a police report stating that Plaintiff's mother was found sitting in a chair so that (presumably), Plaintiff's mother would be adjudged to have died by natural causes.

25.    Jeffrey Gale intentionally and with malice published this false statement in his police report to impugn Plaintiff's veracity and hold her out as a liar, not to be trusted because he had previously told Wadley and Menconi that Plaintiff's mother had died of natural causes.

26.    Jeffrey Gale had no basis for making this false statement, especially since it is against the law to knowingly make false statements in a police report and at no time did Plaintiff ever tell him to do so. Indeed, Plaintiff told FVPD Officer Eric Kulaga that Plaintiff's mother hung herself; provided Kulaga with the electrical cord Plaintiff's mother used to hang herself, as well as explained the actual location of where the incident occurred. As such, there would be no reason for Plaintiff to tell Jeffrey Gale one thing and then tell Officer Kulaga a completely different story within hours of speaking first to Gale and then to Kulaga. Gale did not do the most rudimentary investigation. To the contrary, he rushed in and made the notation that Plaintiff's mother was found in a chair without conducting an investigation of the scene.

27.    The problem for Jeffrey Gale was that he incriminated himself by making the false statement in the police report. A further problem for Gale was that the body of Plaintiff's

8

mother went from Mac Neal Hospital to Suburban Funeral Home without a death certificate indicating that Plaintiff's mother committed suicide based on the "found in chair" false statement made by Gale. For this reason, Stanley Kulasik, the Funeral Director at Suburban Funeral Home, and brother-in-law to Plaintiff by marriage, could not take custody of the body of Plaintiff's mother at the Suburban Funeral Home without a proper death certificate indicating the true cause of death. Therefore, Stanley Kulasik telephoned the CCME and spoke with CCME Investigator Marvin Menconi. During that conversation, Stanley Kulasik told Menconi that Plaintiff's mother "… when initially discovered had been found hanging in the basement of the residence." Stanley Kulasik stated that Plaintiff's mother "… did not expire from natural causes and actually committed suicide by hanging." Further, Stanley Kulasik told Menconi that it was common knowledge that Plaintiff "… had cut … [Plaintiff's mother] down, and removed the ligature.

28.    It was not until after Stanley Kulasik's telephone call to Menconi that Gale either went back to the scene of the hanging and finally spoke with Kulaga, who may have done the investigation that Gale should have done when he initially appeared on the scene. Indeed, this basic investigation, which Gale should have completed prior to making the false statement in the police report, is related in the report of CCME Investigator Anthony Ortiz. Namely, the report by Ortiz states that an investigation of the scene revealed a hook was found attached to a basement rafter and [sic] the ligature had been attached to the hook and tied around the … neck … of [Plaintiff's mother]."

29.    To cover up Jeffrey Gale's false "found in chair statement," which led to the initial natural causes death certificate being issued, CCME Investigator Menconi allegedly had a conversation with Plaintiff on February 1, 2007. As published in the report of CCME

Investigator Anthony Ortiz, Plaintiff is alleged to have "... identified herself as being a police officer from the Brookfield Police Department ... [and] reaffirmed that ... Plaintiff ... discovered ... [Plaintiff's mother] on a chair in the basement, unresponsive." Plaintiff never had such a conversation with Marvin Menconi.

30.    Additionally, Plaintiff never had such a conversation with FVFD firefighters Antos, Riha and DeLorenzo, notwithstanding their report that Plaintiff's mother was found "... sitting in a chair by the daughter" and their initial impression, as marked on that report that Plaintiff's mother suffered "cardiac arrest."

31.    Even though Plaintiff never told anyone that she came home to find her mother sitting in a chair in the basement, Jeffrey Gale wrote that in his police report and conspired with the other named Defendants to cover his tracks. Plaintiff ultimately was terminated as a records clerk with Defendant Village of Brookfield because of this. Indeed, Jeffrey Gale conspired and agreed with each of the named Defendants to deprive Plaintiff of her civil rights by intentionally publishing and distributing false statements, refusing to rectify the inaccuracies in the stated reports; and hiding, altering or otherwise obfuscating evidence of their conduct.

32.    As a proximate result of the foregoing conspiracy and defamatory statements by Defendants, Plaintiff suffered injuries, including damage to her reputation as she was fired due to the statements of the Defendants. Further, the published statements impute to Plaintiff the commission of multiple crimes, namely, obstruction of justice, tampering with evidence, providing false statements, and falsely identifying herself as being a police officer.

33.    The foregoing defamatory statements were made by Defendants with knowledge of their falsity and with actual malice.

34.     The conspiracy to get rid of Plaintiff was continued by Defendant Village of Brookfield on Monday, February 12, 2007, with an informal meeting.   Present at that meeting was Thomas Shoenfeld, Jeffrey Leh, Michelle Robbins and Plaintiff, during which Shoenfeld explained to Plaintiff his "... proposal for seeking her employment termination" and "... offered ... [Plaintiff] the opportunity to resign for 'Personal Reasons'." During the course of this meeting, Shoenfeld did not allow Plaintiff "... the opportunity to offer any explanations" to rebut the false witness made against her.

35.     Later that same day, on Monday, February 12, 2007, Shoenfeld sent a letter to Plaintiff that was styled as a "Notice of Pre-Termination Hearing." The letter set Plaintiff's pre-termination hearing for Friday, February 16, 2007, a mere three full days, not counting time for mailing, which was violative of the Village of Brookfield's regulations, policies, customs and procedures required to be given to employees threatened with disciplinary actions.   This extremely short notice was designed to make it impossible for Plaintiff to respond to the allegations, gather evidence to rebut the claims against her; and ensure that witnesses in her defense could not be contacted and present for the hearing.

36.     The February 12, 2007 letter further provided that "[a] final decision regarding ... [Plaintiff's] employment status will be made **after** the scheduled pre-termination hearing." Id. (*emphasis supplied*). But this statement by Shoenfeld was knowingly false because Plaintiff was presented with a resignation form to sign along with the notice of pre-termination hearing.   Indeed, Shoenfeld did not need a hearing to decide what to do.   He knew he was going to terminate Plaintiff.

37.     As further proof that Shoenfeld had summarily decided to terminate Plaintiff, all without conducting the requisite investigation to substantiate the allegations; without

properly allowing Plaintiff her due process rights; in direct violation of the Record Clerks and Dispatchers Fraternal Order of Police Contract ("FOP Contract)"; and in abrogation of the Village of Brookfield's regulations, policies, customs and procedures; Shoenfeld intentionally published and distributed a memorandum to "all personnel" on February 12, 2007 that Plaintiff was placed on administrative leave as a means to publicly humiliate Plaintiff; cause her great emotional distress; and force her to forego her right to challenge the trumped up allegations against her; compel Plaintiff to give up her right to grievance and arbitration proceedings as provided by the FOP Contract and the Village's own rules and regulations; and as a means to exert extreme pressure on Plaintiff to just sign the resignation form provided with the February 12, 2007 letter and just go away.

38.      Plaintiff was never given a formal, sworn to, complaint setting forth the particulars of the claims against her as is generally required by law. Specifically, Plaintiff was never given in writing a sworn statement of who was making the claims and on what basis. To the contrary, the February 12, 2007 letter merely states baldly and in the most conclusory way, "based upon evidence to be presented that on February 1, 2007, … [Plaintiff] obstructed a Police Investigation tampering with evidence, providing false statements to Investigators of the Forest View Police Department, and [that Plaintiff] falsely identified … [herself] as a Brookfield Police Officer to the Cook County Medical examiners [*sic*] Office."

### First Claim for Relief:
### Violation of the Equal Protection Clause

1-38.    Plaintiff, individually, restates all allegations in paragraphs 1-38 above as paragraphs 1 through 38 of this first claim for relief as if fully pled.

39.      The foregoing acts of the Defendants violate the Plaintiff's right to Equal Protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

12

**Second Claim for Relief:**
**Violation of Due Process**

1-39.　Plaintiff, individually, restates all allegations above as paragraphs 1 through 39 of this second claim for relief directly and by way of reference as if fully pled.

40.　　The foregoing acts of the Defendants violate Plaintiff's right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

**Third Claim for Relief:**
**Failure to Instruct, Supervise and Control**

1-40.　Plaintiffs, individually, restate all allegations above as paragraphs 1 through 40 of this third claim for relief directly and by way of reference as if fully pled.

41.　　At all times relevant to this Complaint, Defendant Gale was acting under supervision of Defendant David and Defendant Village of Forest View; Defendants Riha, Delorenzo were acting under supervision of Defendant Antos, and Defendant Village of Forest View; Defendants Manescalchi, Leh, and Robbins were acting under supervision of Defendant Shoenfeld and Defendant Village of Brookfield; Defendants Menconi and Ortiz were acting under supervision of Defendant Denton of Defendant Cook County.

42.　　Acting under color of law and pursuant to official policy or custom, as set forth above, Defendants knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiff's rights, failed to instruct, supervise, control and discipline on a continuing basis the individual Defendants in their duties to refrain from publishing false reports; conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiff by the Constitution and laws of the United States and the laws of the State of Illinois; and otherwise depriving Plaintiff of her constitutional and statutory rights, privileges, and immunities.

43.     Defendants had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed. The Defendants had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly or with deliberate indifference and callous disregard of Plaintiff's rights failed or refused to do so.

44.     Defendants directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of the individual Defendants heretofore described.

45.     As a direct and proximate cause of the acts of Defendants, Plaintiff suffered loss of income and severe mental anguish in connection with the deprivation of her constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. § 1983.

### Fourth Claim for Relief:
### Violation of Due Process

1-45.   Plaintiff, individually, restates all allegations above as paragraphs 1 through 45 of this fourth claim for relief directly and by way of reference as if fully pled.

46.     The foregoing acts of the Defendants violate Plaintiff's right to Due Process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and protected by 42 U.S.C. § 1983.

### Fifth Claim for Relief:
### Defamation, Libel, Slander and False Light

1-46.   Plaintiffs, individually, restates all allegations above as paragraphs 1 through 46 of this fifth claim for relief directly and by way of reference as if fully pled.

47.    The foregoing acts of the Defendants are defamatory, libelous, slander and otherwise

hold Plaintiff out to the public in a false light.

WHEREFORE, Plaintiff prays for judgment in her favor and against the

Defendants and for the following relief:

A.    For a declaration that the Defendants decision to conspire against her and have her terminated without affording her due process violates her constitutional and statutory rights under the Fifth and Fourteenth Amendments of the Constitution of the United States;

B.    For a declaration that the described acts of Defendants defamed, libeled, slandered and held Plaintiff in a false light;

C.    For an award of attorneys' fees and costs incurred by Plaintiff in prosecuting this matter;

D.    For an award of punitive damages; and

E.    For an award of such other relief in law and equity to which Plaintiff may be entitled to under the premises.

Dated: April 7, 2008                          Respectfully submitted,

                                             By: s/Nicholas C. Kefalos
                                             Attorney for Plaintiff

Nicholas C. Kefalos
VERNOR MORAN, LLC
27 North Wacker Drive, Suite 2000
Chicago, Illinois 60606-2800
(312) 264-4460

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of her claims by jury to the extent authorized by law.

April 7, 2008                          Respectfully submitted,

                                             By: s/Nicholas C. Kefalos
                                             Attorney for Plaintiff

Nicholas C. Kefalos
VERNOR MORAN, LLC
27 North Wacker Drive, Suite 2000
Chicago, Illinois 60606-2800
(312) 264-4460